The Honorable Marvin Parks State Representative 44 Treasure Creek Greenbrier, AR 72058-9052
Dear Representative Parks:
I am writing in response to your request for my opinion regarding whether the Round Mountain Mud Racing Facility (the "Facility"), located in Faulkner County, is subject to a statutory licensing requirement. You have attached to your request correspondence, dated February 22, 2001, from the Arkansas Department of Environmental Quality ("ADEQ") to a citizen who objects to the operation of the Facility. The correspondence describes your constituent's primary concern as being noise pollution, which ADEQ identifies as being beyond its power to regulate. However, the letter points out that ADEQ is authorized to regulate the permitting of motor vehicle racing facilities constructed after January 1, 1995. ADEQ speculates that, based on the types of vehicles raced on the track, the Facility may qualify as a "motor vehicle facility" under the statutory definition.[1] ADEQ concludes that it "cannot bring a legally defensible enforcement action" against the owner because an investigation "has not been able to produce evidence that construction or racing started after January 1, 1995." The investigation on this issue appears to have consisted of talking to the Facility's owner, who reports having constructed the track, initially for non-business purposes, six to eight years before the interview date of February 15, 2001. Because the Facility was not initially run as a business, the owner reports having no business records to document a construction date.
In subsequent correspondence to you, your constituent, who is apparently a police officer or private investigator, complains: "If I used the same methods to solve cases as ADEQ has used to determine compliance with this law, I would never solve a case." He further remarks:
 I maintain that if the races were not a business and were informal that this does [not] "grandfather" them in under this law. If so, any farm field w[h]ere two or three good ole boys lined up their trucks prior to 1995 would also be exempt. I live a short distance from this facility and the first advertised, organized races were held in 1996. I visited with a girl taking admission at the race track who confirmed that they started in 1996.
Against this factual backdrop, you have posed the following question:
 Does [sic] "informal, non-business activities" described at Round Mountain Mud Racing facility, exempt that facility from the state law (ACA § 8-10-302) or, does the actual date on which the track began construction or operation for business purposes be [sic] the date used in determining whether or not this facility must comply with the state law?
RESPONSE
In my opinion, the date of construction of the track, not the date the track opened for business, should determine whether the Facility is subject to the permit requirement. Assuming, then, that the track was built before January 1, 1995, it would not need an ADEQ permit to operate.
The permit requirement for racing facilities is set forth at A.C.A. §8-10-303, not A.C.A. § 8-10-302. The statute provides in pertinent part:
 (a)(1)(A) Due to the noise pollution and air pollution from the racing vehicles and traffic congestion caused by motor vehicle racing facilities, no motor vehicle racing facility shall be constructed in this state after passage of this section without the consent of at least seventy-five percent (75%) of the property owners and seventy-five percent (75%) of the adult residents within three (3) miles of the outside boundary of the proposed facility and without an annual permit issued by the Arkansas Department of Environmental Quality.
* * *
 (c) Within one (1) year of August 1, 1999, each motor vehicle racing facility constructed in Arkansas after January 1, 1995, shall apply for and shall receive an initial annual permit to operate its motor vehicle racing facility. Thereafter, upon the annual renewal date for its permit, the motor vehicle racing facility constructed after January 1, 1995, shall apply annually for renewal of its permit.
It is well established that legislative intent is to be discerned from the language employed if a statute is clear and unambiguous on its face.See generally Mourot v. Arkansas Board of Dispensing Opticians,285 Ark. 128, 685 S.W.2d 502 (1985). On its face, the recited statute is designed to avoid air pollution, noise pollution and traffic congestion. Conspicuously absent in this statute is any condition that the racing be for profit as opposed to pleasure.
I cannot and will not address the factual question of whether ADEQ conducted an adequate investigation regarding the date of the Facility's construction. I am only opining that the statute applies to "good ole boys" and businessmen alike.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] Subsection 8-10-303(b) of the Code defines a "motor vehicle racing facility" as "any facility designed and used for competitive racing by automobiles or trucks which are modified for racing." ADEQ speculates that the Facility may fit within this description since the track runs races of "three hundred to three hundred fifty (300-350) horsepower, off road, four wheel drive vehicles."